# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SURGENEX, LLC, an Arizona limited liability company; ABEL BULLOCK, an individual,<br><br>        Plaintiffs,<br><br>v.<br><br>PREDICTIVE THERAPEUTICS, LLC, a Utah limited liability company; PREDICTIVE BIOTECH, INC., a Utah corporation; and DOUG SCHMID, an individual,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:19-cv-295-RJS-DAO<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

This case arises from a fractured business relationship in the stem cell products market. Plaintiffs Surgenex, LLC and Abel Bullock (Surgenex) bring this action asserting numerous contract and tort claims against Defendants Predictive Therapeutics, LLC, Predictive Biotech, Inc., and Doug Schmid (Predictive). In short, Surgenex alleges that when Schmid—a former outside consultant—left his prior company to work for Predictive, Schmid took Surgenex's trade secrets with him and helped Predictive market and sell essentially the same product he had previously developed for Surgenex. Predictive insists it has never acted unlawfully nor used any of Surgenex's proprietary trade secrets to create its products. Before the court is Predictive's Motion to Dismiss, in which it asks the court to dismiss all of Surgenex's claims.[1] For the reasons explained below, Predictive's Motion is GRANTED in part and DENIED in part.

---

[1] Dkt. 18.

# BACKGROUND

## I.      Factual Background[2]

Surgenex produces and distributes high quality amniotic membrane tissue allografts.[3]
These biomedical products are derived from stem cells for a range of medical and
pharmacological applications.[4]

To expand its product lines and business, Surgenex sought out a laboratory to help it
develop new processes, procedures, and protocols related to allograft tissue.[5]  To that end,
Surgenex executed in December 2014 a consultant agreement (Consultant Agreement) with Utah
Cord Bank (Cord Bank), a Utah corporation owned and operated by Elliott Spencer and Doug
Schmid.[6]

Under the Consultant Agreement, Surgenex and Cord Bank were to work together to
develop and produce biomedical products derived from stem cells.[7]  As the consultant, Cord
Bank's role was to develop "Work Product," which the Consultant Agreement defined as
"certain strategies, reports, technical information, inventions, software, products, processes,
apparatuses, programs, discoveries, [and] designs" to assist Surgenex.[8]  The Consultant
Agreement granted Surgenex sole ownership of the Work Product, including all modifications,
derivative works, and copies.[9]

---

[2] Because this case is before the court on a motion to dismiss, it accepts as true all well-pleaded factual allegations contained in the Complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[3] Dkt. 2 (Compl.) ¶ 20.

[4] *Id.* ¶¶ 23, 26.

[5] *Id.* ¶ 21.

[6] *Id.* ¶¶ 11, 24, 33.

[7] *Id.* ¶ 26.

[8] *Id.*, Ex. A at 2.

[9] *Id.*

Two weeks after Surgenex and Cord Bank entered into the Consultant Agreement, they signed a nondisclosure, non-circumvention, and non-competition agreement (the NDA).[10]  The NDA acknowledged Bullock and Surgenex would share "Confidential Information" and trade secrets with Cord Bank to pursue their joint "Business Purpose"—the development of "a protocol regarding morselized flowable tissue allograft."[11]  The NDA defines Confidential Information to include:

> [A]ll information conveyed by [Surgenex] to [Cord Bank] . . . related to the business, products, services, research or development . . . relating to the Business Purpose, including without limitation: (a) compilations of data (whether in whole or in part) and all analyses, processes, methods, techniques, systems, formulae, research, records, reports, manuals, documentation and models relating thereto; (b) computer software, documentation and databases . . . ; (c) identities of and information about [Surgenex's] suppliers and customers and their confidential information . . . ; (d) inventions, designs, developments, devices, methods and processes . . . ; (e) internal business information, including . . . information relating to . . . marketing, promotional and sales plans, . . . cost and pricing structure . . . ; and (f) all similar or related information.[12]

Cord Bank further agreed not to use any confidential information to compete with Surgenex.[13]

After successfully developing new allograft tissue products for market, Surgenex sought Cord Bank's help with commercial production.[14]  In April 2015, Surgenex and Cord Bank executed a manufacturing contract, and Cord Bank began producing Surgenex's new products.[15]

Sometime after Cord Bank began manufacturing Surgenex's new products, Cord Bank allowed Surgenex's Confidential Information and Work Product to be disseminated to outside

---

[10] *Id.* ¶ 31.

[11] *Id.* ¶ 32; *id.*, Ex. B at 1.

[12] *Id.*, Ex. B at 1.

[13] *Id.* ¶¶ 35–37.

[14] *Id.* ¶ 40.

[15] *Id.* ¶¶ 41, 43.

parties.[16]  Cord Bank also began manufacturing, marketing, and selling a competing product it developed using Work Product in violation of its contracts with Surgenex.[17]

In December 2015, Schmid notified Spencer that he was leaving Cord Bank and would be selling his forty percent interest in the company.[18]  Surgenex alleges Schmid had been courted by other companies "to exploit, convert, and usurp" Surgenex's Work Product and Confidential Information.[19]  One of those companies, Predictive, allegedly offered Schmid stock options in exchange for Surgenex's customer list, confidential information, and other proprietary information.[20]  Schmid possessed this information because of his previous role producing, packaging, and shipping products to Surgenex's customer base.[21]  Schmid ultimately joined Predictive as its Chief Laboratory Officer around February 2016.[22]

Just prior to Schmid leaving Cord Bank, Predictive contacted Spencer and Schmid in January 2016 about purchasing Cord Bank and requested Surgenex's proprietary customer list.[23]  Though Predictive did not ultimately acquire Cord Bank,[24] Surgenex alleges Predictive conspired with Spencer and Schmid to convert Surgenex's Work Product, Confidential Information, and business expectancies.[25]  Predictive allegedly sought this information to develop a competitive product that could be marketed and sold to Surgenex's customers.[26]

---

[16] *Id.* ¶ 49.

[17] *Id.* ¶ 50.

[18] *Id.* ¶¶ 53, 59.

[19] *Id.* ¶ 60.

[20] *Id.* ¶ 61.

[21] *Id.* ¶ 63.

[22] *Id.* ¶ 66; Dkt. 18 at 1.

[23] Dkt. 2 ¶¶ 81, 84.

[24] Dkt. 18 at 2.

[25] Dkt. 2 ¶ 85.

[26] *Id.* ¶ 87.

After becoming aware Schmid may be providing Predictive with Surgenex's confidential and proprietary information, Surgenex sent on February 8, 2016, a cease and desist letter to Schmid, Predictive, and Cord Bank.[27]  Despite Predictive's representations it would not use any of Surgenex's proprietary material,[28] Surgenex alleges it later learned Schmid helped Predictive develop a competitive product using Surgenex's Confidential Information and Work Product.[29] As a result, Predictive now competes directly with Surgenex.[30]

## II.    Procedural History

Surgenex initially sued Predictive—as well as Cord Bank and Spencer—in the United States District Court for the District of Arizona in July 2017.[31]  Following Predictive's motion to dismiss the case for lack of personal jurisdiction, Surgenex stipulated in February 2018 to Predictive's dismissal.[32]  Surgenex continued litigating its case against Cord Bank and Spencer until the parties reached a settlement in December 2018.[33]  The Arizona action was terminated in February 2019, and Surgenex filed this case in the District of Utah in May 2019.[34]  Predictive then filed its Motion to Dismiss, asserting Surgenex fails to sufficiently plead its claims. Predictive's Motion is now ripe for review.

---

[27] *Id.* ¶ 68.

[28] *Id.* ¶ 72.

[29] *Id.* ¶¶ 77–78.

[30] *Id.* ¶ 78.

[31] Dkt. 18 at 2.

[32] *Id.*

[33] *Id.* at 2–3.

[34] Dkt. 2.

## LEGAL STANDARD

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[35]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[36]  When determining whether a complaint meets these criteria, the court "assume[s] the truth of the plaintiff's well-pleaded factual allegations and view[s] them in the light most favorable to the plaintiff."[37]  Although a complaint "need not provide 'detailed factual allegations,' it must give just enough factual detail to provide 'fair notice of what the . . . claim is and the grounds upon which it rests.'"[38]  However, the court will not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[39]

## ANALYSIS

Surgenex asserts in its Complaint nine causes of action.[40]  The court addresses each claim in turn.[41]

---

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[36] *Id.* (citing *Twombly*, 550 U.S. at 556).

[37] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[38] *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quoting *Twombly*, 550 U.S. at 555) (ellipsis in original).

[39] *Iqbal*, 556 U.S. at 678.

[40] The Complaint styles the final cause of action as "Count X," but there is no "Count IX."  *See* Dkt. 2 ¶¶ 182–201.

[41] In its Opposition, Surgenex takes issue with Predictive's legal citations.  Because Surgenex's counsel uses Westlaw, counsel states that Predictive's citation only to Lexis sources makes it "exceptionally difficult" to find or review the cited cases.  Dkt. 27 at 5.  As a result, Surgenex asks the court to strike the Lexis citations from Predictive's Motion.  *Id.*  The court declines Surgenex's invitation.  As an initial matter, no court rule requires litigants to favor Westlaw to Lexis or any other legal databases.  Further, almost all the cases Predictive cites are easily located in Westlaw's database by simply typing the case name into the main search bar on Westlaw's homepage.  And as for the few cases Predictive cites that are available only through Lexis, their unavailability on Westlaw does not make them any less valid legal authorities.  In short, the court will not punish Predictive for citing legal authorities from its preferred legal database.

I.       **Breach of Contract and Breach of the Implied Covenant of Good Faith**

A.  <u>Breach of Contract (Count I)</u>

Surgenex brings its two contract claims against only Defendant Schmid, alleging Schmid breached the confidentiality and non-compete provisions of various contracts by transmitting Surgenex's trade secrets to Predictive and helping it create a competing product.[42]

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[43]  Therefore, to survive Predictive's Motion, Surgenex must plead sufficient factual content to plausibly allege that a contract existed between Surgenex and Schmid, Surgenex performed its contractual obligations, Schmid breached the contract, and Surgenex was damaged.

Predictive argues the contract claim must be dismissed because Schmid is not a party to any of the contracts at issue.[44]  The three relevant contracts—the Consulting Agreement, the NDA, and the manufacturing contract—are all between Surgenex and Cord Bank.[45]  Predictive asserts the contract claim must be dismissed because Surgenex cannot plausibly allege that a contract exists between Surgenex and Schmid.

For its part, Surgenex does not dispute that Schmid is not a party to any of the relevant contracts.  This alone compels the court to dismiss the contract claims.  Under Utah law, "[a]s a general rule, none is liable upon a contract except those who are parties to it."[46]  Courts routinely

---

[42] Dkt. 2 ¶¶ 111, 113.

[43] *Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 14, 20 P.3d 388, *abrogated on other grounds, A.S. v. R.S.*, 2017 UT 77, ¶¶ 21–22, 416 P.3d 465 (citation omitted).

[44] Dkt. 18 at 3.

[45] *See* Dkt. 2, Ex. A at 1; *id.*, Ex. B at 1; *id.*, Ex. C at 1.

[46] *Shire Dev. v. Frontier Invs.*, 799 P.2d 221, 223 (Utah Ct. App. 1990) (internal quotation marks and citations omitted); *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 ("It goes without saying that a contract cannot bind a nonparty.").

reject breach of contract claims brought against non-parties.[47]  Here, Surgenex cannot allege a contract existed between it and Schmid because all of the relevant contracts were between Cord Bank and Surgenex.  Because Schmid did not undertake any obligations in his individual capacity, he cannot be held liable for any of the alleged breaches.[48]

Surgenex nonetheless argues Schmid can be liable for breaching the contracts because he was one of only two principals (and one of only two officers) of Cord Bank, he held a forty percent share of the company at the time the contracts were finalized, and he helped negotiate the contracts himself.[49]  But Surgenex cites no legal authority to support its position.  Nor does it attempt to distinguish Predictive's contrary authority.  Moreover, Surgenex acknowledges that Schmid is an agent of Cord Bank, and "in general, agents cannot be held liable for the contractual breaches of their principals."[50]  Having presented no legal basis for doing so, Surgenex fails to persuade the court that it should depart from these established principles.

Still, Surgenex insists that "exempting" Schmid from breach of contract liability where he transferred confidential information to a competitor would be "deeply inequitable."[51]  But this court is bound to apply established law.  Moreover, dismissing the contract claim does not leave Surgenex without a remedy.  If, as Surgenex alleges, Schmid's actions violate material terms of

---

[47] *See Norman v. Arnold*, 2002 UT 81, ¶ 21, 57 P.3d 997 ("[N]either [Defendant] was a party to the written March 1995 joint venture agreement. Therefore, they cannot be liable to [Plaintiffs] for breach of contract based upon the March 1995 contract."); *Catlin v. Salt Lake City Sch. Dist.*, No. 2:08-cv-362-CW-PMW, 2013 U.S. Dist. LEXIS 188782, at *16 (D. Utah Jan. 25, 2013) ("Plaintiff's complaint fails to allege that [Defendant] was a party to any contract. [Defendant] cannot be liable for any alleged breach of a contract to which he was not a party."); *Bridgeport Retail, LLC v. Commerce CRG Utah, LLC*, No. 2:08-cv-162-TS, 2008 WL 3295850, at *2 (D. Utah Aug. 7, 2008) (dismissing a breach of contract claim in part because the defendant was not a party to the relevant agreement).

[48] *See supra* note 47.

[49] Dkt. 27 at 5–6.

[50] *Quinn v. Stanley*, No. 2:05-cv-180PGC, 2005 WL 3071769, at *3 (D. Utah Nov. 16, 2005) (citing *Roberts v. Tuttle*, 105 P. 916, 923 (Utah 1909)).

[51] Dkt. 27 at 7.

the contracts, Surgenex could bring a breach of contract claim against the other party to the contract—Cord Bank.  Indeed, Surgenex apparently did so and ultimately settled the claim.[52] Surgenex's breach of contract claim must be dismissed.

### B.  Breach of the Implied Covenant of Good Faith (Count II)

Surgenex does not dispute that its claim for breach of the implied covenant of good faith depends upon its breach of contract claim.  "[W]here there is no breach of an express covenant in a contract, there can be no cause of action for breach of an implied covenant arising therefrom."[53]  Having concluded Schmid is not liable for breach of contract, the court also dismisses Surgenex's claim for breach of the implied covenant of good faith.

## II.    Trade Secret Misappropriation (Count VII)

Surgenex asserts in a single count that Predictive's conduct violates both the Utah Trade Secrets Act (UTSA) and Arizona Trade Secrets Act (ATSA).  Specifically, Surgenex alleges that after Schmid helped Surgenex develop, market, and sell new allograft tissue products, he left Cord Bank for Predictive.  Schmid allegedly took Surgenex's trade secrets with him, passed them along to Predictive, and used them to help Predictive develop a substantially similar product that it then marketed to Surgenex's customer base.

Despite maintaining that "any trade secret claim asserted by Plaintiffs would be governed by Utah law and could only be brought under the UTSA," Predictive asserts Surgenex's claim also fails under Arizona law.[54]  However, because the court concludes Surgenex successfully states a claim under the UTSA, it need not separately address Predictive's alternative arguments

---

[52] *See* Dkt. 18 at 4.  Surgenex does not dispute Predictive's representation that Surgenex previously settled a breach of contract claim against Cord Bank.

[53] *Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1176, 1196 (D. Utah 2015) (quoting *Asael Farr & Sons Co. v. Truck Ins. Exch.*, 2008 UT App 315, ¶ 37, 193 P.3d 650).

[54] Dkt. 18 at 12 n.3.

that Surgenex fails to state a claim under the ATSA.  First, both Utah and Arizona adopted the
Uniform Trade Secret Act, and their respective laws are nearly identical.[55]  Thus, for the same
reasons the court finds Surgenex has stated a claim for relief under the UTSA, it would similarly
find Surgenex's allegations are sufficient to state a claim under the ATSA.  Second, this court
recently stated that "Rule 12(b)(6) motions are the proper procedural mechanism to dismiss part
of a complaint, not part of a claim."[56]  Stated differently, if part of a claim survives a Rule
12(b)(6) motion, the entire claim ordinarily survives.[57]  That is the case here.

To establish a prima facie violation of the UTSA, Surgenex must show (1) it possessed a
protectable trade secret, (2) Predictive misappropriated one or more of Surgenex's trade secrets,
and (3) Surgenex was damaged by Predictive's use of the secret.[58]  Predictive contends
Surgenex's trade secret claim must be dismissed for three reasons.  First, Predictive insists
Surgenex has failed to identify the trade secrets at issue with reasonable particularity.  Second,
Predictive asserts Surgenex does not adequately allege Predictive misappropriated the trade
secrets.  Third, Predictive argues this claim is untimely.  The court addresses each argument in
turn.

---

[55] *Compare* Utah Code Ann. § 13-24-2 *with* Ariz. Rev. Stat. Ann. § 44-401.  It does not appear there exist any differences material to the instant Motion.

[56] *Candace B. v. Blue Cross & Blue Shield of R.I.*, No. 2:19-cv-00039, 2020 WL 1474919, at *6 n.78 (D. Utah Mar. 26, 2020); *see also Redwind v. Western Union, LLC*, No. 3:18-cv-02094, 2019 WL 3069864, at *4 (D. Ore. June 21, 2019) (collecting cases).

[57] *See Abraham P. v. Los Angeles Unified Sch. Dist.*, No. CV 17-3105-GW (FFMX), 2017 WL 4839071, at *6 n.7 (C.D. Cal. Oct. 5, 2017) ("This Court's practice is to not dismiss parts of claims at the FRCP 12(b)(6) stage because—unlike Rule 56, for example—FRCP 12(b)(6) speaks of a motion to discuss 'a claim,' not part of a claim. If the [defense] does not get rid of the entire claim, then it cannot be dismissed.").

[58] *See InnoSys, Inc. v. Mercer*, 2015 UT 80, ¶ 24, 364 P.3d 1013 ("Under our Uniform Trade Secret Act, a prima facie case of misappropriation is established on the basis of two essential elements: existence of a protectable 'trade secret' of a plaintiff and demonstration of 'misappropriation' by a defendant."); *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 44, 372 P.3d 629 ("To establish a claim for misappropriation of trade secrets, [Plaintiff] must show (1) the existence of a trade secret, (2) communication of the trade secret to [Defendant] under an express or implied agreement limiting disclosure of the secret, and (3) [Defendant's] use of the secret that injures [Plaintiff].") (internal quotation marks and citation omitted).

A.  <u>Surgenex Adequately Identified Its Trade Secrets</u>

Under the UTSA, trade secrets include any "formula, pattern, compilation, program, device, method, technique, or process" that (1) "derives independent economic value . . . from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," and (2) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[59]

Predictive argues Surgenex has failed to allege the existence of any valid trade secret. According to Predictive, Surgenex identifies its trade secrets only as "intellectual property, proprietary client information, Confidential Information, Work Product, and confidential processes, procedures, and protocols . . . consist[ing] of the methodology, processes, and marketable products developed and produced for [Surgenex]."[60]  Predictive insists these categories of items and information are too vague to support a claim for misappropriation as a matter of law because Surgenex is required to plead its trade secrets with particularity.[61]

But Predictive misstates the law.  The court acknowledges there are possibly conflicting decisions within the District of Utah concerning whether under Utah law a trade secret claim must be pleaded with particularity.[62]  However, the Utah Supreme Court put this question to rest

---

[59] Utah Code Ann. § 13–24–2(4)(a)-(b).

[60] Dkt. 18 at 13 (quoting Dkt. 2 ¶ 173) (first alteration in original).

[61] *Id.*

[62] *Compare Cobalt Flux, Inc. v. Positive Gaming AS*, No. 2:08–CV–185 TS, 2008 WL 4534182, at *3 (D. Utah Oct. 6, 2008) ("There is no heightened pleading standard for trade secrets claims.") *with StorageCraft Tech. Corp. v. Persistent Telecom Sols., Inc.*, No. 2:14-cv-76-DAK, 2015 WL 9592517, at *5 (D. Utah Dec. 31, 2015) ("[A] claimant must identify its purported trade secrets with enough particularity to distinguish them from the general skill and knowledge of others in the industry before a claim for trade secret misappropriation can be maintained under Utah law.").

in its 2016 decision, *USA Power, LLC v. PacifiCorp*.[63]  On appeal from a jury verdict, the Court

considered with what level of specificity a trade secret must be defined at the time of trial.[64]  In

determining the relevant standard, the court clarified "there is no 'particularity' requirement"

under the UTSA.[65]  Although the test the Court established applies at the time of trial, the Court

was clear the UTSA does not contain a particularity requirement at any stage of litigation.[66]  In

the absence of a particularity requirement, the normal Rule 8 pleading standard applies.  That is,

Surgenex's Complaint must simply contain "a short and plain statement of the claim showing

that the pleader is entitled to relief."[67]

Considering the context provided in the Complaint and the history between the parties,

Surgenex has provided sufficient detail to put Predictive on notice of the trade secrets at the

pleading stage.  First, The NDA's Business Purpose—incorporated into the Complaint—

specifically identifies as the contract's purpose "the development of a protocol regarding

morselized flowable tissue allograft derived from amniotic tissues."[68]  Further, Surgenex

highlights the contracts' definitions of Work Product and Confidential Information.  Taken

together, they comprise "the processes, procedures, and protocols that were developed to create

and manufacture the allograft products that were then marketed by Surgenex, along with all of

---

[63] 2016 UT 20, 372 P.3d 629.  Surgenex failed to dispute Predictive's assertion that the Complaint must describe the trade secrets with particularity.  However, the court may not ignore binding Utah precedent relevant to this claim. *See, e.g., Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007) ("When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court . . . .") (internal quotation marks and citation omitted).

[64] *USA Power*, 2016 UT 20, ¶ 48.

[65] *Id.*

[66] *Id.* n.44 (noting that other states have written a particularity requirement into their Trade Secret Acts but that "if a 'particularity' requirement beyond what is present in [Utah's] statute is to be required in trade secret cases, it is for the legislature to implement").

[67] Fed. R. Civ. P. 8(a)(2).

[68] Dkt. 27 at 18 (quoting Dkt. 2, Ex. B).

the analysis, processes, methods, techniques, systems, formula, research, . . . and all similar or related information."[69]   At bottom, the relevant trade secrets comprise the roadmap Surgenex alleges it developed—with Schmid's help—for creating, marketing, and selling unique allograft products.  These allegations allow the court to draw the reasonable inference Surgenex's trade secrets derive independent economic value from not being generally known or readily ascertainable.[70]

Though Surgenex describes some of its trade secrets broadly, Predictive may avail itself of the discovery process to obtain further specificity concerning the particular trade secrets Surgenex alleges Schmid misappropriated.  At this early stage of the proceedings, however, Surgenex's Complaint sufficiently identifies the trade secrets at the heart of its misappropriation claim.

B.  Surgenex Alleged Predictive Misappropriated Surgenex's Trade Secrets

Predictive next argues Surgenex has failed to allege Predictive misappropriated Surgenex's trade secrets.  Misappropriation can be established either through (1) unlawful disclosure or (2) unlawful acquisition.[71]   Unlawful disclosure encompasses "disclosure . . . of a trade secret of another without express or implied consent by a person who . . . knew or had reason to know that his knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use."[72]   Unlawful acquisition includes "acquisition of a trade secret of another by a person who knows or has reason to know that the

---

[69] *Id.* at 19 (internal quotation marks omitted).

[70] Dkt. 2 ¶ 78 ("Defendants now actively compete directly with Surgenex in a very unique and specific field that was unknown to them prior to Surgenex retaining [Cord Bank] and exposing its Confidential Information and Work Product to Defendant Schmid.").

[71] *See Mercer*, 2015 UT 80, ¶ 26.

[72] *Id.* ¶ 27 (quoting Utah Code Ann. § 13-24-2(2)(b)) (ellipses in original).

trade secret was acquired by improper means."[73]  The UTSA defines "improper means" as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."[74]

Predicative contends the Complaint fails to allege facts indicating Predictive acquired Surgenex's trade secrets.[75]  This assertion is puzzling given that the Complaint repeatedly avers Predictive hired Schmid so it could exploit Surgenex's confidential information.[76]  Were it not for Predictive's acquisition of Surgenex's trade secrets, the Complaint alleges Predictive would not have been able to produce competing allograft tissue products.[77]  These allegations that Schmid transmitted Surgenex's confidential and proprietary information to Predictive are sufficient to allege Predictive improperly acquired Surgenex's trade secrets.

Predictive also argues the Complaint fails to allege Predictive used "improper means" to acquire Surgenex's trade secrets.[78]  That is, Predictive maintains the Complaint contains no allegations of theft, bribery, misrepresentation, or breach of a duty to maintain secrecy. Surgenex does not respond directly to this point but asserts Predictive is "alleged to have *stolen* the entire process used to make their product—a product they could have never made without *theft*."[79]  Although the Complaint does not employ the words "steal" or "theft," Surgenex brings

---

[73] *Id.* ¶ 28 (quoting Utah Code Ann. § 13-24-2(2)(a)).

[74] Utah Code Ann. § 13-24-2(1).

[75] Dkt. 18 at 15.

[76] *See, e.g.*, Dkt. 2 ¶ 104 ("Surgenex later learned . . . Defendants Predictive and/or Biotech had in fact . . . contracted and/or employed . . . Schmid, and have actively assisted and conspired with him . . . to use Surgenex's Confidential Information and Work Product to usurp and interfere with Surgenex's business relations and expectancies."); ¶ 105 ("Defendants Predictive and/or Biotech have used Work Product and Confidential Information belonging to Surgenex to develop the same or substantially similar or derivative products, processes, and/or protocols.").

[77] *Id.* ¶ 105.

[78] Dkt. 18 at 15.

[79] Dkt. 27 at 24–25 (emphasis added).  Surgenex advanced this argument to respond to Predictive's attacks on its tortious interference claims.  *See id.*

a separate claim for conversion in which it alleges Schmid unlawfully took Surgenex's proprietary trade secrets.  Indeed, conversion is the civil equivalent of criminal theft.[80]  Thus, viewed in the light most favorable to Surgenex, the allegations concerning Schmid's alleged conversion are sufficient to satisfy the "improper means" element of its misappropriation claim.[81]

### C.   The Statute of Limitations Does Not Bar This Claim

Finally, Predictive argues Surgenex's trade secret claim is untimely.  Under the UTSA, a claim must be brought "within three years after the misappropriation is discovered or, by the exercise of reasonable diligence, should have been discovered."[82]  Surgenex filed its Complaint on May 1, 2019.[83]  Thus, the statute of limitations bars Surgenex's claim if Surgenex discovered or should have discovered the misappropriation before May 1, 2016.

Predictive's statute of limitations argument is an affirmative defense.  To serve as a basis for a 12(b)(6) motion, the applicability of an affirmative defense must be clear from the face of the complaint.[84]  Applied to a statute of limitations defense, "when the dates given in the

---

[80] *See Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1290 (Utah 1993) (explaining that "[p]ersons injured by criminal conduct generally have civil remedies available to them" and that conversion is theft's civil analog).

[81] *See Mercer*, 2015 UT 80, ¶¶ 28–31 (finding that an employee's copying of confidential business plans onto a thumb drive the day she was terminated created a genuine issue of material fact about whether her actions qualified as theft or breach of a duty to maintain secrecy under the UTSA's "improper means" definition).

[82] Utah Code Ann. § 13-24-7.

[83] Dkt. 2.

[84] *See Jones v. Bock*, 549 U.S. 199, 215 (2007) (noting a complaint could be subject to dismissal "[i]f the allegations, for example, show that relief is barred by the applicable statute of limitations" but that the affirmative defense must "appear[] on [the complaint's] face") (internal quotation marks and citations omitted); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2020) (collecting cases) ("As the case law makes clear, the complaint also is subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy; but for this to occur, the applicability of the defense has to be clearly indicated and must appear on the face of the pleading to be used as the basis for the motion.").

complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute."[85]

Here, however, the dates in the Complaint do not make clear that Surgenex's right to sue has been extinguished.  "[T]he statute of limitations on trade secret misappropriation claims begins to run not when a plaintiff can positively and directly prove misappropriation . . . , but simply when the plaintiff has knowledge of sufficient facts from which a reasonable jury could infer misappropriation."[86]  Predictive asserts Surgenex had knowledge of sufficient facts to bring its claim by the end of February 2016.[87]  Specifically, Predictive highlights the February 8, 2016 cease and desist letter in which Surgenex put Predictive and Schmid "on formal notice" concerning their "possible wrongful activities."[88]  Surgenex responds that Predictive ignores critical qualifying language in the Complaint, including that Surgenex sent the February 8 letter after receiving notice only that Schmid "might be" exploiting its trade secrets.[89]

From the face of the Complaint, it is not clear Surgenex had knowledge before May 1, 2016, of sufficient facts from which a reasonable jury could infer misappropriation.  The February 8 letter—and the follow-up letter on February 29—show Surgenex was suspicious Schmid may be passing off its proprietary information to Predictive.  However, Predictive's response on March 9, 2016, assured Surgenex that Predictive never acquired any of Surgenex's confidential information, nor did it have "any type of agreement with Mr. Schmid for

---

[85] *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) (citations omitted).

[86] *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1218 (10th Cir. 2000) (interpreting nearly identical language in Colorado's trade secret statute); *Phillip M. Adams & Assocs., LLC v. Winbond Elecs. Corp.*, No. 1:05-cv-64 TS, 2010 WL 3447251, at *2 (D. Utah Aug. 31, 2010) (applying the *Chasteen* standard in a UTSA case).

[87] Dkt. 29 at 7.

[88] Dkt. 2 ¶ 69.

[89] *Id.* ¶ 68.

employment or consulting."[90]  Although the Complaint acknowledges Surgenex later learned these statements were false,[91] as of March 9, 2016, Surgenex did not have reason to doubt Predictive's representations.  Indeed, even though Surgenex likely continued to be suspicious following Predictive's March 9 response, a reasonable jury could not infer misappropriation from Surgenex's suspicions alone.

Notwithstanding this conclusion, Predictive may later renew its statute of limitations defense.  The Complaint is vague about when Surgenex learned Schmid was allegedly passing off Surgenex's trade secrets.  It may be that Surgenex learned of sufficient facts concerning the alleged misappropriation after Predictive's March 9 letter, but before May 1, 2016.  On the present pre-discovery record, however, it is not clear from the face of the Complaint Surgenex's claim is barred by the statute of limitations.

In sum, the court rejects each of Predictive's three grounds for dismissing this claim. Instead, the court concludes the Complaint provides "just enough factual detail to provide fair notice" of what Surgenex's misappropriation claim entails and the ground upon which it rests.[92]

### III.   Unjust Enrichment and Conversion

Surgenex's claims for unjust enrichment and conversion arise out of the same nucleus of facts described at length above.  After leaving Cord Bank, Schmid allegedly took Surgenex's trade secrets with him and relayed them to Predictive.[93]

Predictive advances multiple theories to argue Surgenex's unjust enrichment and conversion claims must be dismissed, including that the claims are inadequately pleaded,

---

[90] *Id.* ¶¶ 101–02.

[91] *Id.* ¶ 103.

[92] *Warnick*, 895 F.3d at 751 (citing *Twombly*, 550 U.S. at 555).

[93] *See* Dkt. 2 ¶¶ 127, 144–45.

preempted by the UTSA, and barred by the statute of limitations.  But because the court

concludes the UTSA preempts both claims, the court does not reach Predictive's alternative

grounds for dismissal.

To "preserve[] the UTSA as the sole noncontractual civil remedy for misappropriation of

a trade secret, while preserving tort, restitutionary, and other causes of action that seek to remedy

an injury caused . . . by separate conduct," the Utah Court of Appeals has held that the UTSA

preempts claims that rely upon the same factual allegations giving rise to a misappropriation

claim.[94]  Thus,

> if proof of a non-UTSA claim would also simultaneously establish a claim for
> misappropriation of trade secrets, it is preempted irrespective of whatever surplus
> elements of proof were necessary to establish it.  However, to whatever extent
> that a claim is based upon wrongful conduct independent of the misappropriation
> of trade secrets or otherwise confidential information, it is not preempted.[95]

Under this standard, the UTSA preempts both Surgenex's claim for unjust enrichment and its

conversion claim.

A.  Unjust Enrichment (Count III)

Predictive argues Surgenex's unjust enrichment claim derives from its trade secret claim

because "the allegations supporting this cause of action reflect only Plaintiffs' unfounded belief

that Defendants have taken and used their trade secrets to develop a competing product."[96]

Lacking any other independent basis for its claim, Predictive contends the UTSA preempts this

claim.[97]  Surgenex does not respond to this point, and the court agrees with Predictive.

---

[94] *CDC Restoration & Constr., LC v. Tradesmen Contractors*, LLC, 2012 UT App 60, ¶ 48, 274 P.3d 317 (internal quotation marks and citation omitted).

[95] *Id.* (internal quotation marks, citations, and brackets omitted).

[96] Dkt. 18 at 6.

[97] *Id.*

Where a party's unjust enrichment claim is "clearly predicated on facts showing a purported misuse of confidential information," the UTSA preempts that claim.[98]  That is the case here.  The factual allegations supporting Surgenex's unjust enrichment claim mirror the allegations undergirding its trade secret claim.  Indeed, Surgenex refers explicitly to Predictive's alleged misappropriation in its claim for unjust enrichment: "[Surgenex is] entitled to the fair and reasonable value of the lost revenue . . . *as a result of the misappropriation* of Work Product, Confidential Information, derivative works and product."[99]  Because Surgenex's unjust enrichment claim is based on the same facts it relies upon to allege its trade secret claim, the UTSA preempts this claim.

### B.  Conversion (Count V)

As above, Predictive urges the court to dismiss Surgenex's conversion claim because it is "wholly subsumed by Plaintiffs' trade secret misappropriation claim and is preempted by the UTSA."[100]  Again, Surgenex offers no response.  The same standard identified above applies here to determine whether the UTSA preempts Surgenex's conversion claim.  If the factual allegations supporting the conversion claim are the same as those upon which Surgenex relies to make out its trade secret claim, the UTSA preempts the claim.[101]

---

[98] *Brigham Young Univ. v. Pfizer, Inc.*, No. 2:06-cv-890 TS, 2012 U.S. Dist. LEXIS 39639, at *7 (D. Utah Mar. 22, 2012); *see also Margae, Inc. v. Clear Link Techs., LLC*, 620 F. Supp. 2d 1284, 1285–86 (D. Utah 2009) (recognizing the UTSA preempted plaintiff's unjust enrichment claim even though the court dismissed the UTSA claim).

[99] Dkt. 2 ¶ 130 (emphasis added).

[100] Dkt. 18 at 9.

[101] *See Mona Vie, LLC v. FVA Ventures, Inc.*, No. 2:12-cv-152 TS, 2012 WL 1952496, at *3 (D. Utah May 30, 2012) (holding that the UTSA preempted plaintiff's conversion claim where "all of the allegations used to support [Plaintiff's] conversion claim are based solely on the misappropriation and/or misuse" of plaintiff's trade secrets.); *Margae, Inc.*, 620 F. Supp. 2d at 1285–86 (holding that the UTSA preempted plaintiff's conversion claim even though the court dismissed the UTSA claim).

Surgenex alleges Predictive converted its intellectual property, Work Product, and Confidential Information, including customer lists and ordering history.[102]  Surgenex identifies no other property that Predictive converted.  Instead, Surgenex's conversion claim simply repackages the allegations supporting its trade secret claim.  When Schmid began working for Predictive, he allegedly supplied confidential documents, data, and other materials Predictive used to develop products to compete with Surgenex.  In short, the Complaint fails to identify any wrongful conversion independent of the trade secret misappropriation.  Absent allegations of any such independent conduct, the UTSA preempts this claim.

### IV.   Conspiracy (Count IV)

Surgenex alleges that sometime before Schmid began working for Predictive, Schmid and Predictive conspired to convert Surgenex's trade secrets and "to interfere with [Surgenex's] Business Expectations."[103]  "To prove civil conspiracy, five elements must be shown: (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."[104]  Under Utah law, civil conspiracy need not be pleaded with particularity unless the act underlying the conspiracy is a fraud-based tort.[105]

Predictive argues Surgenex's conspiracy claim must be dismissed because the claim does not contain sufficient factual content for the court to draw the reasonable inference Predictive is

---

[102] Dkt. 2 ¶¶ 144–45.

[103] *Id.* ¶¶ 135–37.

[104] *Hurst*, 846 P.2d at 1290 n.17 (internal quotation marks and citations omitted).

[105] *See Zero Down Supply Chain Sols., Inc. v. Global Transp. Sols., Inc.*, No. 2:07-cv-400 TC, 2008 WL 4642975, at *9 (D. Utah Oct. 17, 2008).  Here, the act underlying the alleged conspiracy is trade secret misappropriation, so a heightened pleading standard does not apply.

liable for the misconduct alleged.[106]  Besides a conclusory allegation that Predictive conspired to misappropriate Surgenex's trade secrets, Predictive asserts Surgenex has alleged no facts to support its allegations.  The court disagrees.

Predictive focuses on paragraphs 135 to 138 of the Complaint as evidence Surgenex provides only conclusory allegations.  For instance, paragraph 137 states that "Defendant Schmid conspired and entered an agreement with Defendant Predictive . . . to usurp, convert, and intentionally interfere with and disrupt Plaintiffs' business relations and expectations[.]"[107]  Were this the sole allegation concerning the conspiracy, Predictive may be correct that Surgenex's claim could not move forward.  A plaintiff may not merely declare that the defendants conspired together and hope to defeat a motion to dismiss.[108]  But that is not what Surgenex has done here.

Although sometimes difficult to follow, the Complaint contains other factual allegations sufficient to provide notice of the contours of the alleged conspiracy.  The conspiracy is clearly alleged to be between Schmid and Predictive.[109]  As to the conspiracy's object, Surgenex alleges Predictive sought Surgenex's confidential, proprietary information to copy and market its allograft products.[110]  After Predictive's attempt to obtain this information by purchasing Cord Bank fell through, it needed a new strategy.[111]  So, Surgenex alleges, Predictive reached out to Schmid and offered him stock options if he would turn over Surgenex's "customer list, Confidential Information, or other proprietary information."[112]  Schmid accepted (the meeting of

---

[106] Dkt. 18 at 6–7.

[107] Dkt. 2.

[108] *See Twombly*, 550 U.S. at 556–57.

[109] Dkt. 2 ¶ 137.

[110] *See id.* ¶ 83.

[111] *See id.* ¶¶ 81, 83.

[112] *Id.* ¶ 61.

the minds) and began working for Predictive.[113]  As to the unlawful act, the Complaint alleges

Schmid converted and transmitted Surgenex's trade secrets to Predictive.[114]  These allegations

are bolstered by Surgenex's assertion that, shortly after Schmid began working for Predictive,

Predictive produced "a competitive product that is conspicuously similar to Surgenex's

products."[115]

To be sure, some details are missing.  It is not clear when exactly Schmid accepted

Predictive's offer, what the content of the agreement was, or how Schmid transmitted the trade

secrets.  But the factual content Surgenex avers "allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."[116]  This is enough to push

Surgenex's conspiracy claim over the line from merely possible to plausible.

Finally, Predictive argues "the conduct alleged in the Complaint is entirely consistent

with lawful actions and objectives by Mr. Schmid and the Predictive Defendants."[117]  But

Surgenex has alleged Schmid misappropriated its trade secrets.  Accepting as true Surgenex's

well-pleaded factual allegations—as the court must—Schmid's actions are not consistent with

lawful objectives.  Accordingly, Surgenex's conspiracy allegations are sufficient to state an

actionable claim for relief.

## V.    Tortious Interference

Surgenex asserts two separate causes of action for tortious interference.  First, Surgenex

alleges Predictive tortiously interfered with its contractual relations by inducing Schmid to

---

[113] *Id.* ¶ 62.

[114] *Id.* ¶¶ 64–65, 145.

[115] *Id.* ¶ 77.

[116] *Iqbal*, 556 U.S. at 678.

[117] Dkt. 18 at 7.

breach various contracts between Surgenex and Cord Bank.[118]  Second, Surgenex alleges Predictive tortiously interfered with its business relations by targeting Surgenex's customer base with a product Predictive developed using Surgenex's trade secrets.[119]  Before turning to the substance of the tortious interference claims, however, the court first resolves two preliminary matters.

First, Predictive argues for the first time in its Reply that even if the court concluded Surgenex sufficiently pleaded its misappropriation claim, "the alleged conduct still could not meet the predicate for improper means because it duplicates entirely Plaintiffs' claim for misappropriation of trade secrets and is therefore preempted."[120]  Although Predictive's argument likely has merit, the court does not consider arguments raised for the first time in reply.[121]

Second, although pleaded as two claims, Predictive treats both of Surgenex's tortious interference claims as a single claim, asserting "Utah recognizes only a single cause of action for tortious interference."[122]  Notwithstanding that Surgenex does not dispute this point, the court declines to consider these two claims as one.  To support the proposition that Utah recognizes only a single cause of action for tortious interference, Predictive cites a District of Utah decision, *Garth O. Green Enterprises v. Harward*.[123]  But *Harward* is not so broad.  There, the court concluded only that the Utah Supreme Court has applied a single legal test both to claims for

---

[118] Dkt. 2 ¶¶ 152–58.

[119] *Id.* ¶¶ 182–93.

[120] Dkt. 29 at 8.

[121] "[A] party waives issues and arguments raised for the first time in a reply brief."  *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (quoting *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011)).  Predictive is free later to renew its preemption argument.

[122] Dkt. 18 at 9.

[123] No. 2:15-cv-556-DN-EJF, 2017 WL 914611 (D. Utah Mar. 7, 2017).

tortious interference with *existing* contractual relations and tortious interference with *prospective* economic relations.[124]  And in any event, the Utah Supreme Court has since confirmed the two torts are related but distinct.[125]

That clarification aside, the same legal standard applies to assess each of Surgenex's tortious interference claims.  "[T]o win a tortious interference claim under Utah law, a plaintiff must now prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to the plaintiff."[126]  The court considers each of Surgenex's tortious interference claims in turn.

### A.  Tortious Interference with Contractual Relations (Count VI)

Surgenex alleges Predictive knew of Surgenex's contracts with Cord Bank and that Predictive "intentionally induced Defendant Schmid to breach the Contracts . . . and to provide [Predictive] with Plaintiffs' Confidential Information, Work Product, and customer information."[127]  Predictive argues Surgenex fails to state a claim on this theory because Surgenex does not allege Predictive used any "improper means."[128]  Surgenex does not directly refute this point, and the court agrees with Predictive.

---

[124] *Id.* at *6 (holding that "the correct test for a 'tortious interference claim'" does not vary regardless of whether it is "a claim for interference with *present or prospective* economic relations").

[125] *See C.R. England v. Swift Transp. Co.*, 2019 UT 8, ¶ 15, 437 P.3d 343 ("Although *Leigh* is best read as having applied only to the tort of intentional interference with prospective contracts, *St. Benedict's* clearly extended the *Leigh* test so that it applied to claims involving existing contracts as well as prospective ones.").

[126] *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553 (internal quotation marks and citation omitted).

[127] Dkt. 2 ¶¶ 154–55.

[128] Dkt. 18 at 10–11.

The Utah Supreme Court recently clarified that an inducement to breach an existing contract does not—on its own—constitute improper means.[129]  Rather, the Court "defined improper means narrowly to include only those actions that 'are contrary to law, such as violations of statutes, regulations, or recognized common-law rules,' or actions that violate 'an established standard of a trade or profession.'"[130]  For instance, improper means could entail "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehoods."[131]  But Surgenex does not allege Predictive employed any of these kinds of improper means to induce Schmid to breach the relevant contracts.  Instead, Surgenex alleges Predictive lured Schmid away from Cord Bank with stock option offers.[132]  "[A] person is not liable for intentional interference where the person engaged only in conduct in which he or she was legally entitled to engage."[133]  Because Predictive is entitled to use financial incentives to entice prospective hires to join its company, it did not employ improper means.  Having failed to allege Predictive used improper means, Surgenex's claim must be dismissed.

## B.  Tortious Interference with Business Relations (Count VIII)

Surgenex alleges it "had established a network of clients, customers, and contacts" in the stem cell product market and that it "had business expectancies to continue to sell to, service, and

---

[129] *C.R. England*, 2019 UT 8, ¶ 40; *accord First Am. Title Ins. Co. v. Nw. Title Ins. Agency, LLC*, No. 2:15-cv-229-DN, 2016 WL 6956603, at *1 (D. Utah Nov. 27, 2016) ("[I]nducing a party to breach a valid [contract] cannot be the improper means required for a tortious interference claim.  Since inducing a party to breach an agreement is captured in the tortious interference claim itself, it would be circular to allow it to satisfy the improper means element of the claim.").

[130] *C.R. England*, 2019 UT 8, ¶ 42 (quoting *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 308 (Utah 1982)).

[131] *Id.*

[132] Dkt. 2 ¶ 61.

[133] *C.R. England*, 2019 UT 8, ¶ 44 (citing *Eldridge*, 2015 UT 21, ¶ 50).

increase these relationships and maintain an economic advantage in this market."[134]  By misappropriating Surgenex's confidential information and work product, including its customer lists, Surgenex alleges Predictive was able to contact and solicit Surgenex customers with a directly competing product.[135]

Predictive argues this claim must be dismissed because Surgenex fails to allege that Predictive employed "improper means" or that Surgenex suffered damages.[136]  Predictive is incorrect on both counts.

First, Surgenex has adequately alleged Predictive employed improper means to interfere with its business relations.  Predictive initially asserted that Surgenex's allegations of improper means were limited to its conversion claim and an allegation that Predictive misrepresented itself in selling its products.[137]  But Predictive ultimately acknowledged in its papers that Surgenex also alleged Predictive's misappropriation of its confidential information constitutes improper means.[138]  On this point, Predictive rests on its argument that "the allegations of misappropriation are devoid of facts and wholly conclusory."[139]  The court previously considered those arguments and concluded that Surgenex's misappropriation allegations are sufficient to state a claim for relief.[140]  These same allegations are enough to support the improper means prong of a tortious interference claim.  Improper means include actions that are "contrary to

---

[134] Dkt. 2 ¶ 183.

[135] *Id.* ¶¶ 186, 189.

[136] Dkt. 18 at 10–12.

[137] *Id.* at 11.

[138] Dkt. 29 at 8.

[139] *Id.*

[140] *See supra* Part II.

law."[141]  If, as Surgenex alleges, Predictive misappropriated Surgenex's trade secrets, Predictive

does not dispute—nor could it—that its actions constitute improper means.  Accordingly,

Surgenex has alleged Predictive employed improper means in interfering with Surgenex's

business relations.[142]

Second, Surgenex alleges it suffered damages because of Predictive's tortious

interference.  Predictive argues that Surgenex "do[es] not point to a single customer they lost or

assert that [Predictive] caused them to suffer any particular damages[.]"[143]  But Predictive does

not direct the court to any authority requiring a plaintiff to allege their damages with particularity

at the motion to dismiss stage.[144]  Surgenex alleges it lost revenue, market share, and economic

advantage as a result of Predictive's misappropriation.[145]  This provides sufficient factual matter

accepted as true to draw the inference Predictive's actions harmed Surgenex.  Thus, Surgenex

has sufficiently pleaded it was damaged by Predictive's conduct.

### VI.    Injunctive Relief (Count IX)

In Surgenex's final count, it seeks injunctive relief enjoining Predictive from using its

misappropriated trade secrets.[146]  Surgenex concedes that its final cause of action for injunctive

---

[141] *C.R. England*, 2019 UT 8, ¶ 42.

[142] The parties also dispute whether Surgenex's allegation that Schmid misrepresented to potential customers he was the "founder" of Surgenex is sufficiently pleaded to allege improper means.  *See* Dkt. 18 at 11; Dkt. 27 at 25. However, having concluded that Surgenex's allegations Schmid misappropriated its trade secrets are sufficient to constitute improper means, the court need not consider whether Schmid's misrepresentations would separately qualify as improper means.

[143] Dkt. 18 at 12.

[144] The sole case Predictive cites for this argument is *FDIC v. Aviano*, 184 F. Supp. 3d 1276 (D. Utah 2016).  But *Aviano* does not address the damages issue in dismissing plaintiff's tortious interference claim.  *See id.* at 1296.

[145] Dkt. 2 ¶ 130.

[146] *Id.* ¶ 195.

relief is a remedy—not a standalone claim—and does not oppose Predictive's Motion concerning this claim.[147]   Accordingly, this claim is dismissed.[148]

## CONCLUSION

For the reasons just explained, Predictive's Motion is GRANTED in part and DENIED in part.[149]   Counts I (breach of contract), II (breach of the implied covenant of good faith), and VII (tortious interference with contractual relations) are dismissed without prejudice.  Counts III (unjust enrichment), V (conversion), and IX (injunctive relief) are dismissed with prejudice.  The court denies Predictive's Motion concerning the remainder of Surgenex's claims.

SO ORDERED this 26th day of May 2020.

BY THE COURT:

_____

ROBERT J. SHELBY
United States Chief District Judge

---

[147] *See* Dkt. 27 at 26–27.

[148] *See Leon v. Summit Cty.*, No. 2:17-cv-165-DN-EJF, 2017 WL 5891771, at *5 (D. Utah Nov. 28, 2017) ("Injunctive relief is a remedy, not an independent cause of action. Injunctive relief is available as a remedy only where a party prevails on a separate legal theory.").  Dismissal of this claim does not preclude Surgenex from obtaining injunctive relief as a remedy should it prevail on one of its other claims.

[149] Dkt. 18.