Heidi G. Goebel (10343)
GOEBEL ANDERSON PC
405 South Main Street, Suite 200
Salt Lake City, Utah  84111
Telephone:  801-441-9393
HGoebel@GAPClaw.com

Michael Gerity (AZ015750) *Pro Hac Vice*
ISRAEL & GERITY, PLLC
202 East Earll Drive, Suite 440
Phoenix, Arizona 85012
Telephone: 602-274-4400
mgerity@lg-law.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## STATE OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SURGENEX, LLC, an Arizona limited liability company; ABEL BULLOCK, an individual,<br><br>    Plaintiffs,<br><br>vs.<br><br>PREDICTIVE THERAPEUTICS, LLC, a Utah Limited Liability Company; PREDICTIVE BIOTECH, INC., a Utah corporation; and DOUG SCHMID, an individual,<br><br>    Defendants. | **FIRST AMENDED COMPLAINT**<br><br>Case No. 2:19-cv-00295<br><br>Hon. Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg<br><br>Filed Electronically |

Plaintiffs Surgenex, LLC ("Surgenex"), an Arizona Limited Liability Company, and Abel

Bullock ("Mr. Bullock")(collectively, "Plaintiffs") for their Complaint ("Complaint") against

Defendants Predictive Therapeutics, LLC ("Defendant Predictive" or "Predictive"), a Utah

Limited Liability Company, Defendant Predictive Biotech, Inc. ("Defendant Biotech" or

"Biotech"), a Utah Corporation, and Defendant Doug Schmid ("Defendant Schmid" or "Schmid").

(collectively, "Defendants"), state and allege as follows:

## PARTIES AND JURISDICTION

1.     Surgenex is an Arizona Limited Liability Company duly organized and existing under the laws of the State of Arizona, with its principal offices located at 15444 N. 76th Street, Suite C110, Scottsdale, Arizona, 85260.  All owners and members are citizens of the State of Arizona.

2.     At all times material hereto, Mr. Bullock resided in and was and is a citizen of the State of Arizona.  Mr. Bullock is a principal of Surgenex, and at all times material hereto, was acting both individually and on behalf of Surgenex.

3.     Defendant Predictive is a Utah Limited Liability Company, duly organized and existing under the laws of the State of Utah, with its principal offices located at 2749 Parleys Way, Suite 100, Salt Lake City, UT 84109.  Upon information and belief, all owners and members are citizens of the State of Utah.

4.     Upon information and belief, Defendant Predictive caused events to occur in the States of Arizona and Utah, out of which Plaintiffs' claims arise, and is doing business in both states.

5.     Defendant Biotech is a Utah Corporation, duly organized and existing under the laws of the State of Utah, with its principal offices located at 2749 E. Parleys Way, Suite 101, Salt Lake City, Utah 84109.

6.     Upon information and belief, Defendant Biotech caused events to occur in the States of Arizona and Utah, out of which Plaintiffs' claims arise, and is doing business in both states.

7.     Utah Cord Bank, Inc. ("UCB"), is a Utah Corporation, duly organized and existing under the laws of the State of Utah, with its principal offices located at 8675 S. Sandy Parkway, Sandy, Utah, 84070.

8.     Upon information and belief, UCB caused events to occur in the States of Arizona and Utah, out of which Plaintiffs' claims arise, and is doing business in both states.

9.     At all times material hereto, Defendant Doug Schmid was and is a citizen of the State of Utah at the time of filing the above-captioned action, and currently resides at 1877 Summer Park Circle, Sandy, Utah 84093-1475.   At all relevant times, Defendant Schmid was acting individually and on behalf of UCB followed by Defendants Predictive and/or Biotech.

10.    At all times material hereto, Defendant Schmid was conducting business within the course and scope of his employment with UCB, followed by Defendants Predictive and/or Biotech, as their agent and principal; accordingly, Defendants Predictive and Biotech are vicariously liable for the conduct of Defendant Schmid, in accordance with the Doctrine of *Respondeat Superior*. As alleged above, Defendant Schmid was also acting individually and in his personal capacity.

11.    At all times material hereto, Defendant Schmid was an owner, principal, and key person of UCB.

12.    At all times material hereto, Elliott Spencer resided in the State of Utah at the time of filing the above-captioned action, and currently resides at 23 Sunwood Lane, Sandy, Utah 84092-4802.  At all relevant times, Spencer was acting individually and on behalf of UCB.

3

13.     Defendants have caused events to occur in both the State of Arizona and the State of Utah out of which Plaintiffs' claims arise, and are doing business in both states.

14.     This Court has jurisdiction over the claims and venue is proper pursuant to 28 U.S.C. §§ 1391 and 1332 because (1) Surgenex is an Arizona Limited Liability Company with its principal place of business in Scottsdale, Arizona, and its witnesses are either located in the Phoenix area or are available in the Phoenix area; (2) Defendant Predictive is a Utah Limited Liability Company; (3) Defendant Biotech is a Utah Corporation; and (3) Defendant Schmid is a Utah resident, and thus there is complete diversity of citizenship between Plaintiffs and Defendants; (4) the amount in controversy exceeds $75,000.00; (5) there are no other matters pending between the parties in any other jurisdiction; (6) Defendants have caused events to occur in the State of Utah, among other places, out of which Plaintiffs' claims arise.

15.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because this lawsuit relates to contracts entered into and/or conduct, acts, and/or omissions which occurred in the District of Utah.

16.     The exercise of personal jurisdiction over Defendants by this Court is proper pursuant to and because, among other reasons, Defendants reside in or are doing business in this jurisdiction.

## **GENERAL ALLEGATIONS**

19.     Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

20.     Surgenex is the producer and distributor of the highest quality amniotic membrane tissue allograft in such industry, and produces products used for a wide variety of medical applications.

21.     In an effort to develop its product line and business, Surgenex sought out a laboratory to assist in the development and production of new processes, procedures, and protocols relating to allograft tissue.

22.     Surgenex eventually retained and contracted with UCB, through Defendant Schmid and Spencer, to assist in the development and production of processes, procedures, and protocols to further its business purpose, as set forth below.

23.     Surgenex anticipated and expected to develop and service a market for a flowable allograft stem cell product for medical and pharmacological uses.  As such, Surgenex developed the market for its products and developed a significant customer base.

**The Consultant Agreement with UCB**

24.     On or about December 4, 2014, Mr. Bullock and Surgenex entered into a consultant agreement (the "Consultant Agreement") with UCB, attached hereto as **Exhibit A** and incorporated by reference herein.  The Consultant Agreement was executed by Mr. Bullock on behalf of himself and Surgenex, and by Spencer, on behalf of UCB.

25.     Defendant Schmid personally engaged in the negotiation of the Consultant Agreement and was well aware that the company that he owned and of which he was a principal and key person was entering into the Agreement.

26.     The Consultant Agreement was effectuated to assist Mr. Bullock, as a principal of Surgenex, in developing a proprietary protocol to harvest stem cells from amniotic and other stem-

cell rich tissue, and to assist Surgenex in developing and producing biomedical products derived from stem cells.

27.    Defendant Schmid and Spencer were, in essence, the entirety of UCB, it was they who Surgenex believed to possess the knowledge and skills necessary to perform UCB's obligations under the Agreement, and it was they who engaged in the work done by UCB under the Agreement.

28.    Pursuant to the Consultant Agreement, it was agreed that UCB would develop certain inventions, products, protocols, strategies, reports, technical information, designs, and other things that would be considered work product ("Work Product").

29.    Pursuant to the Consultant Agreement, the Work Product developed by UCB for, with, and/or pertaining to Surgenex would be "Work Made for Hire" as is defined in 17 U.S.C.S. § 101 and throughout the Copyright Act of 1976.

30.    Pursuant to the Consultant Agreement, all rights, title, and interest in and to any Work Product, including all modifications, derivative works, and copies were to remain the sole and exclusive property of Surgenex.

**The Non-Disclosure, Non-Circumvention and Non-Competition Agreement**

31.    On or about December 16, 2014, Mr. Bullock and Surgenex entered into a nondisclosure, non-circumvention and non-competition agreement (the "Non-Compete Agreement") with UCB, attached hereto as **Exhibit B** and incorporated by reference herein.

32.    Pursuant to the Non-Compete Agreement, Mr. Bullock and Surgenex would share confidential information, trade secrets and other confidential and/or proprietary information

concerning the development of a protocol regarding morselized flowable tissue allograft derived from amniotic tissues.  This was established as the business purpose (the "Business Purpose").

33.     Of course, as the sole owners and principals of UCB, both Defendant Schmid and Spencer were the actual individuals with whom all such confidential information, trade secrets and other confidential and/or proprietary information would be directly shared.

34.     Pursuant to the Non-Compete Agreement, UCB and/or its agents, including Defendant Schmid and Spencer, agreed to keep confidential all analysis, processes, methods, techniques, systems, formula, research, *inter alia*, and all similar or related information, including the Business Purpose and Work Product ("Confidential Information") that they received relating to Surgenex or Mr. Bullock that was not otherwise generally known to the public.

35.     Pursuant to the Non-Compete Agreement, UCB and/or its agents, including Defendant Schmid and Spencer, agreed to not use any advantages derivable from the Confidential Information in its own business or affairs.

36.     Pursuant to the Non-Compete Agreement, UCB and/or its agents, including Defendant Schmid and Spencer, expressly agreed to not compete with Surgenex in matters directly related to the Business Purpose.

37.     Pursuant to the Non-Compete Agreement, UCB and/or its agents, including Defendant Schmid and Spencer, explicitly agreed that they would not, directly or indirectly, contact, have discussions with, deal with, take any actions, or otherwise become involved with any third parties that compete with Surgenex, or would circumvent or impair Surgenex's ability to pursue its Business Purpose.

38.    Defendant Schmid directly participated in the discussions and negotiations of the specific terms of the Non-Compete Agreement, and as an agent, owner and principal of UCB, was well aware that the terms of the Non-Compete Agreement applied to him.

39.    Spencer executed the Non-Compete Agreement on behalf of UCB and its agents.

### The Manufacturing Contract

40.    Having been successful at developing and inventing new processes, procedures, and protocols relating to allograft tissue, and in developing products for market, Surgenex had related discussions with UCB, Spencer and Defendant Schmid and sought to begin commercial production of certain products, which was known or should have been known by Defendant Schmid as early as December 2014.

41.    On or about April 2, 2015, Surgenex entered into a manufacturing contract (the "Manufacturing Contract") with UCB, attached hereto as **Exhibit C** and incorporated by reference herein.

42.    Pursuant to the Manufacturing Contract, UCB agreed to commercially manufacture certain allograft products for Surgenex, with Defendant Schmid and Spencer being the persons directly engaging in the manufacture of those products.

43.    UCB commenced production, through the efforts of Defendant Schmid and Spencer, and Surgenex and UCB, Defendant Schmid and Spencer engaged in a satisfactory relationship.

44.    The Consultant Agreement, Manufacturing Agreement, and Non-Compete Agreement may be cumulatively referred to as the "Contracts" for brevity.

**UCB**

45.     At all relevant times, UCB was the entity engaged by Plaintiffs to develop proprietary protocols to harvest stem cells from amniotic and other stem-cell rich tissue, and to assist Surgenex in developing and producing biomedical products derived from stem cells for market, as discussed *supra*.

46.     UCB was engaged through the Contracts pursuant to which UCB, Defendant Schmid and Spencer were given Confidential Information, and UCB was contracted to develop and produce products through the efforts of Defendant Schmid and Spencer.

47.     Plaintiffs, through UCB, Defendant Schmid and Spencer, developed protocols and products that are confidential and protectable.  This was known to UCB, Defendant Schmid and Spencer, and the Contracts were implemented to protect this information.

48.     UCB, through its agents Defendant Schmid and Spencer, allowed Plaintiffs' Confidential Information, Work Product, and other protected information to be disseminated to outside parties, in violation of the Contracts, whereby Plaintiffs have sustained damages.

49.     Defendant Schmid personally disseminated Plaintiffs' Confidential Information, Work Product, and other protected information to be disseminated to outside parties, in violation of the Contracts, whereby Plaintiffs have sustained damages.

50.     Further, despite the Contracts explicitly prohibiting such, UCB, while still owned and controlled by Defendant Schmid, began directly manufacturing, marketing, and competing with Surgenex with a product known as "Stemshot," which was developed using Work Product and Confidential Information belonging to Plaintiffs.  Thus, UCB and its agents, including

Defendant Schmid, breached the Contracts with Plaintiffs, and Plaintiffs have been damaged and continue to incur damages.

51.     Further, despite the Contracts explicitly prohibiting such, Defendant Schmid, either on his own or through the other Defendants, is now directly manufacturing, marketing, and competing with Surgenex with other products, which were developed using Work Product and Confidential Information belonging to Plaintiffs.  Thus, Defendant Schmid has breached the Contracts with Plaintiffs, and Plaintiffs have been damaged and continue to incur damages.

**Defendant Schmidt**

52.     At all relevant times of contracting, UCB had two principals, Spencer, the Chief Executive Officer ("CEO"), and Defendant Schmid.

53.     Upon information and belief, and at all relevant times, Defendant Schmid was an officer and/or agent of UCB, and held a 40% ownership in UCB.

54.     Upon information and belief, Spencer and Defendant Schmid routinely communicated and discussed the business affairs and decisions of UCB, including but not limited to the Contracts.  Further, upon information and belief, at all relevant times hereto, Spencer and Defendant Schmid approved and consented to the actions taken by UCB, and each other, as alleged herein.

55.     All relevant Contracts were timely and properly executed by Spencer, thus binding UCB, its agents and official representatives, including Defendant Schmid, as an agent, owner, principal and key person of UCB.

56.     Defendant Schmid actively participated in the development, fabrication, and production of Surgenex's Work Product.

10

57.     Defendant Schmid was exposed to and received significant and substantial Confidential Information relating to Surgenex and/or Surgenex's Work Product.

58.     As a result of this exposure, Defendant Schmid became aware of, and/or had access to, the significant market and business relations and expectancies of Surgenex and the market and customer base that Surgenex had developed.

59.     On or about December 2015, Defendant Schmid provided notification to Spencer that he was leaving UCB and would be selling his interest to pursue other opportunities.

60.     Upon information and belief, Defendant Schmid was courting and/or being courted by other companies in a wrongful effort to exploit, convert, and usurp Surgenex's Work Product, Confidential Information, opportunities and business expectancies.

61.     Upon information and belief, Defendant Predictive and/or Defendant Biotech offered Defendant Schmid stock options and shares of stock in exchange for Surgenex's customer list, Confidential Information, or other proprietary information.

62.     As a result of the offerings from Defendant Predictive and/or Defendant Biotech, Defendant Schmid left UCB and was retained by Defendant Predictive.

63.     Defendant Schmid was acutely aware of Surgenex's customer lists, shipping information, ordering information, marketing strategy, pricing information, Confidential Information, and other proprietary information as he was engaged first hand in production, packaging, and shipping to Surgenex's customer base.

64.     Defendant Schmid was further acutely aware that this information was confidential and proprietary, and that he was bound by the Contracts to not disclose or usurp this information.

65.     Because he was a 40% owner of UCB and because he himself signed the above contracts with Plaintiffs, Defendant Schmid was fully aware of the confidential nature of Plaintiffs' Confidential Information and Work Product, and that all rights, title, and interest in and to any Work Product, including all modifications, derivative works, and copies were the sole and exclusive property of Surgenex.

66.     Upon information and belief, Defendant Schmid conspired and took overt acts in furtherance of such conspiracy, and entered an agreement with Defendant Predictive and/or Defendant Biotech to usurp, convert, and interfere with Surgenex's business expectations, for their own benefit and to the detriment of Surgenex and Mr. Bullock.

67.     Upon information and belief, Defendant Schmid contracted and/or was retained by Defendant Predictive on or about February 2016.  Defendant Predictive was a biotech company at the time, but is now competing directly with Surgenex, since receiving Confidential Information from Defendant Schmid.

68.     Defendant Schmid misappropriated what he knew to be Plaintiffs' Confidential Information and Work Product, including trade secrets, which he knew to be the sole and exclusive property of Plaintiffs, and used that to develop for Defendants a competing product that they could have never made without the theft of Plaintiffs' intellectual property and trade secrets.

69.     As a result of Defendant Schmid's wrongful actions, Defendants Schmid, Predictive, and/or Biotech have strategically targeted Surgenex's established customer base in an attempt to usurp and interfere with Surgenex's business relations and expectancies.

70.     After receiving notice that Defendant Schmidt might be pursuing this course of action, in an effort to protect its interests and property, Surgenex, through counsel, sent a cease

and desist letter to Defendant Schmid, Defendant Predictive, and UCB on or about February 8, 2016 (the "C&D Letters").  The C&D Letters were sent through the United States Postal Service via Certified Mail.

71.     In the C&D Letters, Surgenex identified and put on formal notice its position regarding the possible wrongful activities of all Defendants.  Surgenex asserted its position on the proprietary and confidential nature of the products and process, and that it would aggressively pursue any and all breaches.  Defendants received explicit notice of the proprietary and confidential nature of the materials and information transferred by Defendant Schmid, and were explicitly advised against using Surgenex's Confidential Materials and protected information.

72.     Defendant Schmid responded via email on February 11, 2016 (the "February 11 Email").  In the February 11 Email, Defendant Schmid asserted that he was not bound by any contract with Surgenex because he did not sign them.

73.     Defendant Schmid further asserted that he "does not have a contract with Predictive." He further asserted: "I will be competing in the stem cell and stem cell product arena, but will not be using macerated amniotic membrane product."

74.     As described more fully *infra*, Defendant Predictive, through its principal Eric Olsen, called counsel for Surgenex on February 11, 2016, and also assured counsel that Defendant Predictive had not engaged Defendant Schmid, that Predictive had no desire to utilize any proprietary or protected material, and would not do anything that would expose the company to litigation.

75.     Plaintiffs made further attempts to determine whether Defendant Schmid had been in contact and/or was sharing Confidential Information and Work Product with Defendant

Predictive, but Defendants Schmid and Predictive both repeatedly denied that Defendant Schmid had been hired or engaged by Defendant Predictive.

76.     These statements turned out to be false.

77.     Surgenex later learned of the falsehood of these repeated statements, and learned that Defendant Schmid did in fact, contrary to the repeated assertions of Defendants, contract and/or become employed by Defendant Predictive and/or Defendant Biotech, and has actively assisted and conspired with them, and continues to do so, to use Surgenex's Confidential Information and Work Product to usurp and interfere with Surgenex's business relations and expectancies.

78.     Upon information and belief, Defendant Schmid has and/or continues to breach the Contracts that he is bound to by releasing and/or using Work Product and Confidential Information belonging to Surgenex.

79.     Upon information and belief, Defendant Schmid has developed, assisted in developing, or directed—either alone or with assistance of other Defendants—a competitive product that is conspicuously similar to Surgenex's products.

80.     Defendants Schmid, Predictive, and Biotech have conspired and have taken overt acts in furtherance of the conspiracy, to convert, misappropriate, and usurp Surgenex's Confidential Information, Work Product, and intentionally interfere with Surgenex's business relations and expectancies, and have actively attempted to conceal these activities by making direct misrepresentations to Plaintiffs and their counsel.  Said Defendants now actively compete directly with Surgenex in a very unique and specific field that was unknown to them prior to Surgenex retaining UCB and exposing its Confidential Information and Work Product to Defendant Schmid.

81.     Upon information and belief, Defendant Schmid holds himself out to be the "founder" of Surgenex, wrongly represents that he invented the proprietary processes and Work Product, and wrongfully asserts that the products he now develops for Defendants are improved products based upon the ones he claims to have developed for Surgenex, while wrongfully suggesting that Surgenex is not qualified to continue making its products without Schmid's assistance.  Defendant Schmid has attempted to market himself directly to Surgenex's existing and expected customers based on his multiple false claims that he was actually the "founder" and that he invented the products they were purchasing from Surgenex, that he has used what he claims to have invented for Surgenex to make superior products for Defendants, and that Surgenex is no longer able to make its products properly without his assistance.

82.     By making these misrepresentations to Surgenex's existing and expected customers, Defendants, through Defendant Schmid, mislead those customers into believing that Defendants are capable of and permitted to offer products based upon or derived from Surgenex's products, that they should place their trust in Defendants to further the development and improvement of the products they were purchasing from Surgenex, and that Surgenex would not be able to continue to offer the same products now that Defendant Schmid was no longer assisting Plaintiffs.

83.     These misrepresentations were made by Defendant Schmid to Surgenex's existing and expected customers in both verbal statements by phone or in person and/or in emailed communications, and were made during the period between March of 2016 and March of 2017.

84.     Defendant Schmid used these false representations to wrongfully interfere with Surgenex's customer relations and to use his knowledge of proprietary information to compete with Surgenex.

**Defendant Predictive and/or Defendant Biotech**

85.     Upon information and belief, on or about January 2016, Defendant Predictive and/or Defendant Biotech contacted UCB, Spencer, and Defendant Schmid, in an attempt to purchase UCB.

86.     Defendant Biotech is a wholly-owned subsidiary of Defendant Predictive.

87.     Upon information and belief, this purchase attempt was a veiled attempt to acquire proprietary information for competing products being produced at UCB—namely, Surgenex's materials, including Work Product and Confidential Information.

88.     Upon information and belief, Defendant Predictive and/or Defendant Biotech requested Surgenex's proprietary customer list from UCB, Spencer, and Defendant Schmid, which was Confidential Information.

89.     Defendant Predictive and/or Defendant Biotech conspired and took overt acts in furtherance of the conspiracy, with Defendant Schmid, with Spencer, and with UCB to convert Plaintiffs' Work Product, Confidential Information, and business expectancies.

90.     Upon information and belief, Defendant Predictive and/or Defendant Biotech offered Spencer and Defendant Schmid stock options and shares of stock in exchange for Surgenex's customer list and Confidential Information.

91.     Upon information and belief, Defendant Predictive and/or Defendant Biotech sought to make a competitive product and submit it to Surgenex's customers.  Defendant Predictive

and/or Defendant Biotech was aware of Surgenex's unique products, market, and business expectancies, and sought to usurp and convert this information and opportunity for their own benefit, to the detriment of Surgenex and Mr. Bullock.

92. Upon information and belief, Spencer initially rebuffed Defendant Predictive and/or Defendant Biotech's request for Confidential Information.

93. Later, as discussed *supra*, Defendant Schmid left UCB and was retained by Defendant Predictive and conspired to convert, interfere, and misappropriate Plaintiffs' Work Product and business expectancies.

94. Once Surgenex's principal was notified of the actions by Defendant Schmid and Defendant Predictive, he acted promptly to protect the interests of Surgenex.

95. As mentioned *supra*, Surgenex's counsel sent Defendant Predictive a C&D Letter via Certified Mail on or about February 8, 2016.

96. Duplicate letters were sent to both Bradley Robinson ("Mr. Robinson") directly, as well as to Defendant Predictive's office address.  Mr. Robinson is the President of Defendant Predictive.

97. On or about February 11, 2016, Mr. Eric Olson ("Mr. Olson") called Surgenex's counsel to discuss the C&D Letter Defendant Predictive had received.  Mr. Olson is the President and CEO of Defendant Biotech.

98. Mr. Olson asserted that Defendant Predictive had interviewed Defendant Schmid, but had no type of agreement with Defendant Schmid.

99. Mr. Olson further asserted that they had not received any information from Defendant Schmid regarding Surgenex's products or Confidential Information.

100.     Mr. Olson further asserted that they had interviewed Defendant Schmid, but had not contracted or engaged him in any way, and had no current plans to do so.

101.     Surgenex's counsel requested that Mr. Olson draft and send a letter confirming his statements and Defendant Predictive's position.   Mr. Olson agreed to send a letter with the requested confirmation.

102.     However, after failing to receive the agreed-upon letter from Mr. Olson, and after learning about additional communications between Defendant Schmid and Defendant Predictive, Surgenex's counsel sent another letter to Defendant Predictive on or about February 29, 2016 (the "February 29 Letter").

103.     On or around March 9, 2016, Mr. Olson again contacted Surgenex's counsel to discuss the February 29 Letter.  He was extremely agitated.  Mr. Olson asserted that they had still not retained and/or received anything from Defendant Schmid, and that if they did, they would immediately contact Surgenex's counsel.

104.     Mr. Olson then forwarded a letter that he had allegedly drafted on February 7, 2016, after the initial conversation, but that he had inadvertently sent to the incorrect email address, and was not previously received by Surgenex's counsel.  The letter was received by Surgenex's counsel on March 9, 2016 (the "March 9 Letter").

105.     Pursuant to the March 9 Letter, Predictive "is not, and never has had access to any proprietary information related to the development of manufacturing."

106.     Further, the March 9 Letter asserts that Predictive does "not have any type of agreement with Mr. Schmid for employment or consulting."

107.    These statements, along with those made by representatives of Defendant Predictive by phone, turned out to be false.

108.    Surgenex later learned of the falsehood of these repeated statements, and learned that Defendants Predictive and/or Biotech had in fact, contrary to the repeated assertions of Defendants, contracted and/or employed by Defendant Schmid, and have actively assisted and conspired with him, and continue to do so, to use Surgenex's Confidential Information and Work Product to usurp and interfere with Surgenex's business relations and expectancies.

109.    Upon information and belief, Defendants Predictive and/or Biotech have used Work Product and Confidential Information belonging to Surgenex to develop the same or substantially similar or derivative products, processes, and/or protocols.

110.    Upon information and belief, Defendants Predictive and/or Biotech have begun selling and competing with Surgenex in a market/field that was known only to Surgenex, and that could not have been known without Confidential Information from Surgenex.

111.    The concept upon which Defendants Predictive and/or Biotech were and are competing was pioneered and developed by Surgenex under the protection of the Contracts.

112.    As alleged *supra*, Defendants Predictive and/or Biotech, through Defendant Schmid, have made misrepresentations to Surgenex's existing and expected customers in order to mislead those customers into switching to Defendants' products.

113.    Due to Defendants' actions described above, Plaintiffs sustained damages in an amount to be proven at trial.

## COUNT I
### (Conspiracy—All Defendants)

114.    Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

115.    Pursuant to the Contracts, Plaintiffs and Defendant Schmid agreed to certain terms regarding the development and production of Work Product, Confidential Information, and finalized commercial products.

116.    Defendants, in conjunction with one another, had the intent to promote or aid in the commission of an offense or unlawful objective, namely conversion of Plaintiffs' Work Product, Confidential Information, and to interfere with Plaintiffs' Business Expectations.

117.    Upon information and belief, Defendants, collectively, agreed with the objective and the manner in which they were to convert and intentionally interfere with Plaintiff's business relations.

118.    Upon information and belief, Defendant Schmid conspired and entered an agreement with Defendant Predictive and/or Defendant Biotech to usurp, convert, and intentionally interfere with and disrupt Plaintiffs' business relations and expectations, for their own benefit.

119.    Defendants engaged in an unlawful, overt act in furtherance of the offense and/or conspiracy.  Defendant Schmid terminated his position with UCB and affiliated with Defendant Predictive and/or Defendant Biotech.  Defendant Schmid wrongfully transmitted Plaintiff's Confidential information, Work Product, customer information, and other confidential and/or proprietary information to Defendant Predictive and/or Defendant Biotech, in furtherance of their conspiracy.

120. Defendant Schmid, Defendant Predictive and/or Defendant Biotech, in furtherance of their conspiracy, duplicated Plaintiff's Work Product and targeted and marketed directly to Plaintiff's existing customer base, effectively usurping, interfering and disrupting Plaintiff's business relations and expectations.

121. As a result of Defendants' actions of conversion and tortious interference, Plaintiffs sustained damages.

122. Upon information and belief, Defendants acted with a consistent pattern to undermine the Contracts to the detriment of Plaintiffs, to the extent that their conduct constitutes a conscious disregard of the substantial likelihood that such conduct is likely to cause injury and thus, constitutes conduct sufficient to incur a penalty of punitive damages.

123. Plaintiffs are therefore entitled to punitive damages in an amount sufficient to stop such conduct and deter similar conduct in the future.

## COUNT II
### (Violations of the Utah and Arizona Trade Secrets Act—All Defendants)

172. Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

173. Upon information and belief, Defendants, by improper means, acquired and misappropriated legally protectable trade secret information, including, *inter alia*, intellectual property, proprietary client information, Confidential Information, Work Product, and confidential processes, procedures, and protocols. This trade secret information consists of the methodology, processes, and marketable products developed and produced for Plaintiff by UCB and Defendant Schmid.

174.   This trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic values from its disclosure or use.

175.   Plaintiffs undertook reasonable efforts under the circumstances to maintain the secrecy of this trade secret information.

176.   This acquisition was performed by a person or people who knew, or who should have known, that it was being acquired by improper means, and those persons or people used improper means to acquire Plaintiffs' trade secrets.

177.   Upon information and belief, Defendants acted willfully and maliciously in acquiring and misappropriating Plaintiffs' trade secret information.  Defendants acquired this trade secret information and replicated Plaintiffs' Work Product by producing an extremely similar product produced with the same processes and methodology employed by Plaintiff.  Defendants then began strategically targeting and marketing to Plaintiffs' largest customers.

178.   As a direct and proximate result of Defendants' conduct, Plaintiffs have been damaged and will continue to be damaged in an amount to be proven at trial.

179.   In misappropriating Plaintiffs' trade secrets, Defendants acted to serve their own self-interests, despite the fact that they knew or had reason to know, and consciously disregarded, the risk that their conduct created a risk of significant harm to Plaintiffs.

180.   Defendants' conduct is a violation of both the Utah Uniform Trade Secrets Act, U.C.A. § 13-24-1 *et seq*., and the Arizona Trade Secrets Act, A.R.S. § 44-401 *et seq*.

181.   Pursuant to the relevant statutes, Plaintiffs are entitled to an award of reasonable attorneys' fees, based on Defendants' willful and malicious misappropriation of trade secrets.

## <u>COUNT III</u>
### (Tortious Interference with Business Relations— All Defendants)

182.     Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

183.     Plaintiffs engage in production and sale of proprietary stem cell products, and maintain, own, and utilize Confidential Information and Work Product in furtherance of their business expectancies.  Plaintiffs had established a network of clients, customers, and contacts and maintained a business relationship with these parties.  Plaintiff had business expectancies to continue to sell to, service, and increase these relationships and maintain an economic advantage in this market.

184.     Defendant Schmid was aware and had knowledge of the above-described business expectancy of Plaintiff's customers, clientele, and/or prospective customers and clientele, as he was directly involved in production and shipping to said clients, customers, and contacts during his employment with and ownership of UCB.

185.     Defendant Schmid conspired with and transmitted this information to Defendant Predictive and/or Defendant Biotech.  Thus, Defendants Predictive and Biotech were aware of Plaintiffs' business expectancy.

186.     Defendants intentionally targeted, pursued, and interfered with Plaintiffs' business relationships by directly reaching out, contacting, and soliciting them with a directly competing product.

187.     Defendants, through Defendant Schmid, further contacted various customers and potential customers and made multiple misrepresentations, set forth in detail supra, that he was the "founder" of Surgenex, that he invented Surgenex's product, that Defendants offered a product

derived from and improved upon the Surgenex products, and that Surgenex could no longer produce an equivalent product without his assistance, in a blatant attempt to mislead the customers so that Defendants could interfere with Plaintiff's relationships.

188.    Defendants Predictive and Biotech, through Defendant Schmid, were acutely aware of and had knowledge of Plaintiff's established business relationships with customers, clients, and contacts, as Defendant Schmid had assisted in development, production, and transmission of Plaintiffs' Work Product.

189.    Defendants Predictive and Biotech developed a competing product, and began targeting, soliciting, misleading and interfering with Plaintiffs' customers, clients, and contacts, using Plaintiffs information and customer lists.

190.    Defendants intentionally and improperly interfered with Plaintiffs' relationships with current and/or prospective customers and/or clientele by, *inter alia*, strategically targeting and soliciting existing clientele and/or customers, misappropriating clientele and/or customers, improperly competing with converted property and/or derivative property, misrepresenting themselves and misleading the current and/or prospective customers, and failing to cease and desist when instructed by Plaintiffs.

191.    As a result of the actions by Defendants, Plaintiffs' business relationship and business expectancy has been disrupted and Plaintiffs have been damaged and continue to suffer damages in an amount to be proven at trial.

192.    Defendants acted improperly by interfering with Plaintiffs' business relationships and business expectancy, thereby causing damages to Plaintiffs in an amount to be proven at trial.

193.    Upon information and belief, Defendants acted with an evil hand guided by an evil mind, wherein they intended to cause injury to Plaintiffs, or alternatively, consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.

194.    Plaintiffs are therefore entitled to punitive damages in an amount sufficient to stop such conduct and deter similar conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, as follows:

A.    The entry of judgment in favor of Plaintiff and against Defendants;

B.    For damages in an amount to be proven at trial;

C.    For interest on the principal sum at the highest rate allowed per annum from the date of Defendants' breach, until paid;

D.    For punitive damages in an amount sufficient to punish the Defendants jointly and severally and to deter similar future conduct by the Defendants and other similarly situated parties;

E.    For Plaintiffs' reasonable attorneys' fees incurred, or, if this matter proceeds by default, then in the amount of $10,000.00;

F.    For injunctive relief;

G.    For Plaintiffs' costs incurred herein, pursuant to Fed. R. Civ. P. 54(d) or otherwise provided by law; and

H.    For such other relief as the Court deems just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, demand is hereby made for trial by jury of all issues in this action.

DATED this 27th day of October, 2020.

ISRAEL & GERITY, PLLC

*/s/ Michael Gerity*
Michael Gerity

*Attorneys for Plaintiffs Surgenex, LLC and Abel Bullock*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October, 2020, a true and correct copy of the **FIRST**

**AMENDED COMPLAINT** was emailed to all parties of record:

> Alan S. Mouritsen
> PARSONS BEHLE & LATIMER
> One Utah Center
> 201 South Main Street, Suite 1800
> Salt Lake City, UT 84111
> amouritsen@parsonsbehle.com
>
> Marina C. Tstalis
> Matthew D. Gorman
> WILSON SONSINI GOODRICH & ROSATI
> 1301 Avenue of the Americas, 40th Floor
> New York, NY 10019-6022
> mtsatalis@wsgr.com
> mgorman@wsgr.com

                                           _/s/ Michael Gerity_